**Dessie X. WOODS, Petitioner,**

v.

**Leland LINAHAN, Warden of the Georgia Rehabilitation Center For Women, Respondent.**

No. 79–2768.

United States Court of Appeals, Fifth Circuit. Unit B

June 22, 1981.

Dennis Cunningham, Chicago, Ill., for petitioner-appellant.

Robert S. Stubbs, II, Executive Asst. Atty. Gen., Nicholas G. Dumich, Sp. Asst. Atty. Gen., John C. Walden, Senior Asst. Atty. Gen., Don A. Langham, 1st Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before TJOFLAT, HATCHETT and THOMAS A. CLARK, Circuit Judges.

HATCHETT, Circuit Judge:

In this habeas corpus appeal, Dessie X. Woods, the petitioner, challenges her conviction in Georgia state courts for armed robbery and voluntary manslaughter. Her challenges are on the following grounds: (1) she was denied due process of law and fundamental fairness by the participation in the trial of a private attorney retained and paid by the family and friends of the victim; (2) the evidence is insufficient to support her manslaughter conviction; and (3) the evidence is insufficient to support her armed robbery conviction. We hold that Woods's rights were not violated by the private attorney's participation, the evidence is sufficient to sustain the manslaughter conviction, but the evidence is insufficient to support the armed robbery conviction. We therefore affirm Woods's conviction for manslaughter and reverse her conviction for armed robbery.

### FACTS

Woods and her co-defendant, Cheryl Todd, resided in Atlanta, Georgia. Todd persuaded Woods to accompany her in Reidsville, Georgia, to visit Todd's brother who resided in Reidsville. They decided to hitchhike to Reidsville. The trip to and return from Reidsville occurred without incident. Later Todd decided to visit her

brother again. Again Woods and Todd decided to hitchhike. Their trip to Reidsville occurred without incident. Upon arriving in Reidsville, Todd became ill and eventually fainted beside the road. Woods sought to comfort Todd by sitting down on the side of the roadway and placing Todd's head in her lap. Believing the women were intoxicated, local police officers approached the women and told them if they did not "move along" they would be arrested and incarcerated. After verbal and physical exchanges, Woods and Todd were arrested and taken to jail. Upon their release three days later, Woods and Todd decided to hitchhike back to Atlanta. Together, they had $20 in currency.

Ronnie Horne, the victim, picked them up in Lyons, Georgia. Todd testified that when Horne drove his car near them, she observed a two-way radio in his car. She believed, based upon the presence of the radio, that Horne was a police officer. Fearing that they would be arrested for hitchhiking, Todd requested Horne to take them to the local bus station so they could catch a bus to Atlanta. After the two women were in Horne's car, he told them that he would take them to Atlanta. He said he had alcoholic beverages under his seat and that they could "party" en route to Atlanta.

Horne drove towards Frank's Kountry Kitchen located on Highway 280 in Wheeler County, Georgia. En route, Horne contacted Royce Yawn, a fellow insurance colleague, by radio. He told Yawn to meet him at Frank's Kountry Kitchen because he wanted to give Yawn some insurance forms and "that he had something he wanted to show him." Horne and the two women arrived at Frank's Kountry Kitchen shortly after Yawn arrived. While Horne and Yawn sorted the insurance forms, Woods and Todd went into the restaurant. After Todd placed her order, the two women went into the restroom to finish a bottle of wine which they had in their possession. Because Horne wanted another drink, Yawn went into the restaurant to purchase a coke and cigarettes. According to the facts as found by the Supreme Court of Georgia,

"Yawn was visibly under the influence of alcohol when he entered the restaurant and . . . he and Horne had been drinking during the day." Woods v. State, 240 Ga. 265, 239 S.E.2d 786, 788 (1978).

After leaving the restaurant, Todd attempted to get into Yawn's car. Horne, however, directed Todd to get into his car if she wanted a ride to Atlanta. Todd thereafter got into Horne's car and sat between Horne and Woods in the front seat.

Todd testified that after they left Frank's Kountry Kitchen, Horne became verbally abusive and suggested that they go into the woods to "party" and engage in sexual acts. Immediately after Horne stated he wanted to go into the woods to engage in sexual acts, Todd testified that she felt a gun and holster resting on the seat between herself and Horne. She became hysterical and demanded that Horne stop the car and let them out. After speeding up for a short time, Horne "reluctantly" stopped the car and let them out. The two women began walking back to Frank's Kountry Kitchen. They met Yawn who was travelling in his car in the same direction as Horne. Woods and Todd explained to Yawn that Horne had taken a road leading away from Atlanta, that he had become abusive, and that Horne wanted to take them into the woods to party and engage in sexual acts. Todd also told Yawn that she had felt a gun on the front seat of Horne's car. Yawn took the women back to Frank's Kountry Kitchen. Again, they decided to hitchhike to Atlanta. After walking a short distance, the women came upon Horne again. Horne apologized for his behavior and stated that although he could not take them to Atlanta he would take them as far as he was going. He added that the two women should get into his car because police officers were searching for them. The two women got into Horne's car. This time, Woods sat next to Horne and Todd sat near the right door in the front seat. Todd testified that because of Horne's prior conduct she was afraid of him even though he had apologized and promised that he would not harm them. Shortly after the women entered

Horne's car, however, Horne again became abusive and stated that he wanted to take them into the woods to party and engage in sexual acts. Todd testified that she became hysterical.

Upon reaching an unmarked, paved, county road, a shortcut to I–16, Horne pulled his car halfway off the road and demanded that the two women get out. Todd testified that she immediately got out of the car and ran into the woods. In a tape introduced by the state, Woods stated that Horne reached for his gun on the seat beside him. Woods stated that she wrestled the gun away from Horne, "shot him with his gun . . . stopped the car and cut the car off." According to her taped statement, she thereafter got out of the car on the passenger's side, ran around the car, opened Horne's door, reached into his pocket and obtained his wallet which contained approximately $120.

Todd testified that when she heard the shots, she thought Horne had killed Woods. Woods, however, called out to Todd immediately after the shots were fired and told Todd that she had shot Horne and that he was dead. Todd said she ran back near Horne's car. Upon arriving at the car, Woods told Todd to put Horne's money into her pocket for safekeeping. Todd testified that she knew it was Horne's money because Woods said, "we need the money to get back to Atlanta."

The two women then ran down an unidentified road and hitchhiked a ride with five young men. Russell Williams, one of the young men in the car, testified that Woods told them she had killed Horne because he tried to rape her and Todd. She also told them she had taken his money.

The state indicted Woods for murder and armed robbery. After the return of the indictment, family and friends of the victim contributed money to hire a private attorney to assist the district attorney in prosecuting Woods and Todd. The private attorney assisted and sometimes directed the

prosecution. A jury returned a verdict of guilty of manslaughter and armed robbery. On direct appeal, the Georgia Supreme Court affirmed Woods's convictions. The federal district court denied Woods habeas corpus relief. Woods appeals to this court.

## ISSUES

We must determine whether the evidence is sufficient to sustain Woods's convictions for voluntary manslaughter and armed robbery and whether the role of the private attorney was within constitutional bounds.

## I.

Woods first argues that the State's use of a private attorney to assist in her prosecution denies her due process of law and fundamental fairness.[1] With regard to this argument, the following facts are relevant.

Either before Woods was indicted or immediately thereafter, the Sheriff of Wheeler County, Georgia, told F.M. Burch, a criminal investigator for the City of Dublin, Georgia, and a good friend of the victim, that district attorney Mullis was inundated with cases and would probably need assistance in prosecuting the Woods case. The Sheriff therefore asked Burch to ask the family and friends of the victim whether they would hire a private attorney to assist Mullis in prosecuting Woods. Burch, thereafter, approached friends and family members of the victim and asked whether they would contribute money to hire a private attorney to assist Mullis in prosecuting Woods. After communicating with these people and securing their approval, Burch met with a private attorney and requested the attorney's participation in the case. The attorney agreed. He stated that he would participate in the trial for a fee of $1500, or $2000 if the trial was extended for some reason. The group paid the private attorney a deposit of $800 and agreed to pay the remaining monies when they raised it.

---

1. Woods has presented other issues in this appeal. Because they were not raised in the federal district court they are not properly before

the court. *Mayberry v. Davis*, 608 F.2d 1070 (5th Cir. 1979).

In a pretrial hearing the defense moved the state trial court to disqualify the private attorney. The private attorney testified that after being hired, he informed district attorney Mullis that he had been retained by family and friends of the victim to assist in the prosecution. He then asked Mullis "what he thought about it." Mullis approved, and gave the private attorney his file. The private attorney thereafter "carried the ball" on the first motion and subsequent motions. In addition, the private attorney interviewed witnesses, filed motions, and did research independent of and sometimes without the knowledge of Mullis. Approximately two weeks after the private attorney's *de facto* appointment, Mullis resigned as district attorney. Although another district attorney was appointed to replace Mullis, his appointment was not effective until approximately two weeks later. During this time, the private attorney made trial strategy decisions independent of anyone because he was "the only one available."

The victim's father testified at the disqualification hearing that he contributed $100 to the prosecution fund. He stated that he expected the private attorney to "go all of the way." He explained that he meant for the private attorney to try the case until it was over, regardless of whether a trial was necessary.

The state trial judge denied Woods's motion to disqualify the private attorney. In so doing, the trial judge stated that under Georgia law and the law of the Fifth Circuit, "a private attorney may only properly participate subject to the control and authority of the district attorney or someone else authorized by the court to act in that capacity." He noted that during the further progress of the trial, he would regard the new district attorney as being in charge of the case, and that "no one else [could] participate without his approval."

During the further progress of the trial, the newly appointed district attorney took charge of the case. He made an opening statement, examined witnesses, and made a closing statement to the jury. The private attorney generally assisted him in these endeavors.

The issue whether a private attorney, paid by the victim's family and friends, may constitutionally participate in the prosecution of the accused has been the subject of infrequent litigation in this circuit. In *Powers v. Hauck*, 399 F.2d 322 (5th Cir. 1968), however, a panel of this circuit adopted the decision of a trial court which addressed this issue. In *Powers*, a private attorney participated in all phases of the trial of the defendant as a special prosecutor, having been employed by the family of the deceased to prosecute the case. The defendant, considering the private attorney's participation in the trial to be constitutional error, petitioned the federal district court, and finally this court, for habeas relief. The trial court held, and this court agreed, that:

> The mere participation of a special prosecutor alone is not sufficient grounds to show a denial of due process, without some additional showing of a violation of the rules relating to prosecuting attorneys.
>
> . . . .
>
> There is no constitutional prohibition against the use of special prosecutors, and so long as the criminal district attorney retains control and management of the prosecution, the special prosecutor is not guilty of conduct prejudicial to the defendant, and the rights of the defendant are duly observed, no reason exists why such settled practice, in and of itself, should cause the reversal of a case.

*Powers*, at 325 (citations omitted).

Having reviewed the record and the contentions of the parties, we are convinced that under the standard announced in *Powers*, participation by the private attorney in Woods's trial did not offend the Constitution. We consider the private attorney's initial activities as a special prosecutor to border on a constitutional violation. After district attorney Mullis turned over his file, the private attorney acted independently of Mullis. He interviewed witnesses, filed motions, and made trial strategy decisions

without the knowledge or consent of Mullis. In our view, these activities were not carried out under the direction, control, or knowledge of the district attorney. After the disqualification hearing, however, the new district attorney took an active role in the prosecution. He made the opening statement, examined witnesses, and made a closing statement to the jury. His role in the trial was prompted by the state trial court's implicit urgings that the district attorney take a more active role in the prosecution and that anyone participating in the prosecution should do so under the control and direction of the district attorney. We find that the new district attorney's participation in the prosecution after the trial court announced its order cured any defect that may have occurred in the pretrial stages of this case. Reversible error on this issue has not been shown.

While we find that no error is shown in this case, we note our concern about the practice of using a private attorney, paid by family and friends of the victim, to prosecute persons accused of murdering a person dear to the people paying the private prosecutor. Human experience indicates that an attorney who is paid by a group of people to provide a service has some loyalty to those persons paying his fee. This loyalty may serve to prejudice the well recognized rights of a defendant accused of committing a crime. While we do not intimate that a defendant will always be prejudiced by the participation of a private attorney in a criminal prosecution, the chances are greater in this situation than where the state's attorney, or an attorney appointed and paid by the state, prosecutes the case.

## II.

■ Woods next argues that the evidence is insufficient to sustain her conviction for voluntary manslaughter. She asserts that the state's evidence did not preclude her theory that Horne intended to rape and kill her and that her actions were in self-defense.

In order for this court to sustain Woods's conviction for voluntary manslaughter, the state must have proved every element of that crime beyond a reasonable doubt. *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Under Georgia Code Annotated § 26–1102, the substantive elements of voluntary manslaughter are: (1) an intentional killing, which was (2) unlawful and (3) prompted solely by a sudden, violent, and irresistable passion resulting from serious provocation sufficient to excite such passion in a reasonable person. The element of unlawfulness has been construed by this court to mean absence of self-defense where the self-defense issue is raised by the evidence. *Holloway v. McElroy*, 632 F.2d 605 (5th Cir. 1980). The issue of self-defense is clearly raised by the evidence in this case.

Before deciding whether the evidence supports Woods's conviction for voluntary manslaughter, we note that the applicable standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The state undoubtedly proved the first element of voluntary manslaughter. In a taped statement introduced at trial, Woods said she shot and killed Horne. We are also convinced that the prosecution proved the third element beyond a reasonable doubt. In the same taped statement, Woods said Horne became abusive and wanted to take them into the woods to "party" and engage in sexual acts. These statements, combined with Horne's actions could have sufficiently provoked Woods.

We are less confident, however, about the second element. The evidence indicating unlawfulness or an absence of self-defense was (1) Woods's statement that she wrestled the gun away from Horne, who was five feet nine inches tall, and weighed 215 pounds; (2) the fact that Woods shot Horne in the head twice at close range; and (3) the arrangement of Horne's clothing indicating that no struggle occurred. Based upon this evidence, we find that a rational

trier of fact could have found that Woods's act of killing Horne was unlawful (i. e., not in self-defense) beyond a reasonable doubt. As stated in *Holloway*, "we reach this decision after giving due regard to the fact that, under *Jackson*, we are to consider circumstantial as well as direct evidence, and that we are to assume that the jury drew all reasonable inferences from basic facts to ultimate facts."[2] *Holloway*, at 641.

### III.

■ We next consider whether the evidence was sufficient to sustain Woods's conviction for armed robbery. Under Georgia Code Annotated § 26–1902, a person commits armed robbery when, (1) with intent to commit theft, (2) he takes property of another from the person or the immediate presence of another, (3) by use of an offensive weapon. The only evidence introduced on this issue was (1) Woods took money from Horne's pocket after she shot him and (2) Woods and Todd only had $20 between them before the shooting. Under the *Jackson* standard, we consider this evidence insufficient to support the conviction of armed robbery. In Georgia, the offensive weapon must be used to effectuate the robbery. *Rolland v. Georgia*, 235 Ga. 808, 221 S.E.2d 582 (1976). The record is devoid of any evidence showing that Woods used the weapon or shot the victim in order to rob him of his money. We find that no rational trier of fact could find that Woods committed armed robbery beyond a reasonable doubt based on this evidence.

### CONCLUSION

We hold: (1) the private attorney's participation in the trial did not operate to deny Woods due process of law and funda-

mental fairness; (2) the evidence is sufficient to sustain Woods's conviction for voluntary manslaughter; and (3) the evidence is insufficient to support Woods's conviction for armed robbery. Accordingly, we affirm Woods's conviction for voluntary manslaughter and reverse her conviction for armed robbery.

AFFIRMED IN PART AND REVERSED IN PART.

---

**2.** While we hold that a rational trier of fact could have found that Woods's act of killing Horne was unlawful, we point out that it is possible that the state trial court failed to instruct the jury that the state has the burden of proof on the issue of unlawfulness or absence of self-defense when the issue is raised by the evidence. In *Holloway v. McElroy*, 632 F.2d 605 (5th Cir. 1980), and *Tennon v. Ricketts*, 642 F.2d 161 (5th Cir. 1981), two panels of this court struck down charges similar to the one

used in this case as unconstitutionally shifting the burden of proof to the defendant on the issue of unlawfulness. Although Woods challenged the trial court's charge of self-defense in the Georgia Supreme Court, she failed to raise this issue in the federal district court or in this court. Consequently, we express no view on this issue because it is not properly before the court. *Mayberry v. Davis*, 608 F.2d 1070 (5th Cir. 1979).