**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 94-10730
_____

WAYNE EAST,

Petitioner-Appellant,

VERSUS

WAYNE SCOTT, Director, Texas Department of Criminal Justice,
Institutional Division,

Respondent-Appellee.
_____

Appeal from the United States District Court
For the Northern District of Texas
_____
(June 9, 1995)

Before POLITZ, Chief Judge, KING and DAVIS, Circuit Judges.

DAVIS, Circuit Judge:

Wayne East, a Texas Death Row inmate, appeals the district court's dismissal of his § 2254 habeas corpus petition. East's primary contention on appeal is that the district court erred by dismissing his habeas petition without providing him with an opportunity for discovery or an evidentiary hearing. After careful consideration, we agree that the district court erred by dismissing East's due process and Brady claims without affording him the opportunity for discovery. We further conclude, however, that the district court did not err by dismissing East's remaining claims without the opportunity for discovery or an evidentiary hearing. We therefore vacate the district court's judgment and remand for further proceedings consistent with this opinion.

I.

In August 1982, a Taylor County, Texas jury convicted Wayne

East of capital murder and sentenced him to die for the murder of Mary Eula Sears. Sears was killed during a burglary of her home. The linchpin of the state's evidence against East was the testimony of his accomplice, Dee Dee Martin. Martin testified that after she and East broke into Sears' house, East bound Sears and repeatedly stabbed her when she refused to remain quiet. The Texas Court of Criminal Appeals subsequently affirmed East's conviction and sentence on direct appeal, and the U.S. Supreme Court denied certiorari. East v. State, 702 S.W.2d 606 (Tex.Crim.App. 1985), cert. denied, 474 U.S. 1000 (1985).

East filed his first state habeas petition in May 1986 and the state trial court stayed East's June 1986 execution date. The trial court granted East's request for an evidentiary hearing, but denied his request for discovery. After the evidentiary hearing, the trial court entered findings of fact and recommended that East's application be denied. The Texas Court of Criminal Appeals subsequently denied East's habeas application without a written order.

In May 1987, East filed his first federal habeas petition. Following an evidentiary hearing before a magistrate judge, the district court adopted the magistrate's findings and denied East's petition. East did not appeal the district court's order. In February 1990, the district court appointed the Texas Resource Center to represent East after East's former counsel withdrew from the case. East's new counsel subsequently filed a Rule 60(b) motion for relief from the district court's judgment denying habeas relief. The court granted East's motion in part by allowing him to

2

file an amended petition. The district court subsequently dismissed East's amended petition without prejudice because he failed to exhaust several of his claims in state court.

After exhausting his remaining claims in state court, East filed the present federal habeas petition in June 1992. East's petition alleged 23 grounds for reversing his conviction and death sentence. East also filed a motion requesting an evidentiary hearing and the opportunity to conduct discovery. In response to the state's motion for summary judgment, the district court denied East's request for discovery and an evidentiary hearing, and dismissed East's petition. We granted East a certificate of probable cause to appeal the district court's dismissal.

## II.

East argues that the district court erred in denying his habeas petition in the following respects: (1) in dismissing his petition without allowing him the opportunity for discovery or an evidentiary hearing to resolve his claim that the participation of a private attorney in his prosecution violated the Due Process Clause, (2) in failing to conduct an evidentiary hearing to resolve his Brady claims, (3) in failing to conduct an evidentiary hearing to resolve his claim that the prosecution knowingly used false testimony at trial in violation of Napue v. Illinois, 360 U.S. 264 (1959), (4) in rejecting his argument that the state trial court violated Beck v. Alabama, 447 U.S. 625, 638 (1980) by not instructing the jury on the lesser included offenses of murder and felony murder, (5) in rejecting his argument that his trial counsel provided ineffective assistance in violation of the Sixth

3

Amendment, and (6) in rejecting his argument that the form of Texas' death penalty special interrogatories prevented the jury from giving effect to mitigating evidence in violation of Penry v. Lynaugh, 492 U.S. 302 (1989). We shall consider each of these arguments in turn.

## A.

## THE PRIVATE PROSECUTOR

East first contends that the district court should have permitted discovery and held an evidentiary hearing to resolve his claim that the involvement of a private prosecutor in his prosecution denied him due process. Prior to East's trial, the victim's family retained Russell Ormesher, a former Dallas County prosecutor, to assist the Taylor County district attorney in East's capital murder prosecution. East maintains that Mr. Ormesher essentially controlled all the critical trial strategy and prosecutorial decisions, and that Ormesher's role in the prosecution thus violated the Due Process Clause.

The opportunity for an evidentiary hearing in a federal habeas corpus proceeding is mandatory only where there is a factual dispute which, if resolved in the petitioner's favor, would entitle the petitioner to relief and petitioner has not received a full and fair evidentiary hearing in state court. Townsend v. Sain, 372 U.S. 293 (1963). East raised his due process claim for the first time in an amendment to his federal habeas petition. Consequently, the state trial court did not consider the claim during the evidentiary hearing on East's original state habeas petition. The district court considered East's claim only after the state waived the

4

exhaustion requirement of § 2254. East's entitlement to an evidentiary hearing on this claim thus turns on whether his claim raises a question of fact which, if decided in his favor, would entitle him to relief. To resolve this issue, we must first examine the case law governing the participation of privately-retained attorneys in criminal prosecutions.

Powers v. Hauck[1] was the first decision by this court to expressly address whether the participation of a private prosecutor in a criminal prosecution violates the Due Process Clause. In Powers, a habeas petitioner convicted of capital murder alleged that the victim's family hired a private attorney to assist in his prosecution. The court adopted the district court's holding that "the mere participation of a special prosecutor alone is not sufficient grounds to show denial of due process, without some additional showing of a violation of the rules relating to prosecuting attorneys." Id. The court concluded that the private prosecutor's involvement did not violate due process because the elected district attorney retained control and management of the prosecution and the private prosecutor never acted without the district attorney's consent or supervision. Id.

In Woods v. Linahan, 648 F.2d 973, 976 (5th Cir. 1981), the court similarly held that the participation of a privately-retained attorney in a murder prosecution did not offend due process even though the attorney exercised independent control over the prosecution during its pre-trial stages. The private prosecutor in Woods conducted the pre-trial investigation, interviewed witnesses,

---

[1]     399 F.2d 322, 325 (5th Cir. 1968).

filed and argued pre-trial motions, and made pre-trial strategy decisions without the supervision or control of the district attorney. According to the court, the private prosecutor's pre-trial activity "border[ed] on a constitutional violation" because "these activities were not carried out under the direction, control, or knowledge of the district attorney." Id. at 976-977.

However, the court concluded that there was no due process violation in Woods because the district attorney assumed control of the prosecution once the trial started. After the trial started, the district attorney assumed control over trial strategy decisions, gave the state's opening and closing arguments, and examined all the witnesses. While the private prosecutor assisted the district attorney during the trial, he never acted without the district attorney's consent or supervision. Thus, as in Powers, the Woods court held that the private prosecutor's actions did not offend due process because he did not control important phases of the prosecution.[2]

In Person v. Miller, 854 F.2d 656, 664 (4th Cir.), cert. denied, 489 U.S. 1011 (1989), the Fourth Circuit followed similar reasoning in concluding that a private prosecutor must effectively

---

[2]    East argues that the Supreme Court's decision in Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787 (1987) creates a strict blanket prohibition against the participation of private prosecutors and, therefore, impliedly overrules Woods and Powers. We disagree that Young alters the analysis set out in Woods and Powers. Young merely held that the counsel for a party in the position to gain from a criminal contempt proceeding cannot be appointed by the court to prosecute the party charged with contempt. In contrast to Woods and Powers, the private prosecutor in Young acted as the government's sole representative throughout the trial. Moreover, Young was decided under the Court's supervisory power over federal courts, not as a matter of federal constitutional law.

control a prosecution to violate the accused's due process rights. The court reasoned that, for purposes of due process, it is important to determine whether a private prosecutor controlled crucial prosecutorial decisions, such as "whether to prosecute, what targets of prosecution to select, what investigative powers to utilize, what sanctions to seek, plea bargains to strike,or immunities to grant." Id. According to the court,

> It is control over these critical prosecutorial decisions which determine the fairness of particular prosecutions that is the important consideration; operational conduct of the trial is actually of subordinate concern, except as it may actually impact upon the more fundamental prosecutorial decisions.

Id. The court reasoned that, while the quantitative division of trial work has some relevance to determining control, the ultimate question must be whether the private prosecutor controlled these crucial prosecutorial decisions. Id. at 663.

We agree with the Fourth Circuit's characterization of the proper framework for resolving East's claim. We therefore turn to East's pleadings to determine whether he alleges specific facts suggesting that Mr. Ormesher effectively controlled critical prosecutorial decisions throughout East's prosecution. East makes the following factual allegations regarding Mr. Ormesher's role:

-- Ormesher controlled all the significant trial strategy decisions for the prosecution, including the decision to offer a plea bargain to Dee Dee Martin, the prosecution's key witness linking East to Sear's murder,

-- Ormesher conducted an independent pre-trial investigation and maintained a separate case file,

-- Ormesher interviewed all the state's key witnesses independent of the supervision or control of the Taylor County district attorney,

-- Ormesher played a key role during the trial. According

7

to East, Ormesher made the prosecution's opening and closing arguments and participated in the direct examination of the prosecution's most important witnesses,

-- Ormesher was a "seasoned" veteran of capital murder prosecutions, while the district attorney prosecuting the case had little experience.

Applying the framework developed in Powers, Woods, and Person, we conclude that these factual allegations raise the inference that Ormesher effectively controlled East's prosecution and, consequently, are facially sufficient to establish a prima facie due process claim.

We now turn to East's contention that the district court erred in denying his discovery motion and in failing to hold an evidentiary hearing. Rule 6 of the Federal Rules Governing § 2254 Cases expressly provides for discovery in habeas proceedings if the petitioner shows "good cause" for discovery.[3] According to the commentary to Rule 6,

> [W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.

While the district court generally has discretion to grant or deny discovery requests under Rule 6, a court's blanket denial of discovery is an abuse of discretion if discovery is "indispensable to a fair, rounded, development of the material facts." Coleman v.

---

[3] Rule 6 provides:

A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

Zant, 708 F.2d 541, 547 (11th Cir. 1983)(quoting Townsend, 372 U.S. at 322).

Given the nature of East's allegations, we agree that East has shown good cause for discovery under Rule 6. While the state court record reveals the extent to which Ormesher questioned witnesses and participated in the trial, the record is silent as to whether Ormesher effectively controlled critical prosecutorial decisions. Indeed, the Taylor County district attorney, the district attorney's staff, and Mr. Ormesher are likely the only witnesses who can shed any light on this issue. The record indicates that East has not, however, been able to obtain access to these witnesses or their files. The district court denied East's request to depose these witnesses and examine their files. Because access to these witnesses and their files are necessary to fully develop the facts needed to consider East's claim, we conclude that the district court abused its discretion in denying East's discovery requests.

We need not, however, decide whether East is entitled to an evidentiary hearing. An evidentiary hearing is required under Townsend only if the record reveals a genuine question of fact. Ward v. Whitley, 21 F.3d 1355, 1367 (5th Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 1257 (1995). Allegations that are facially sufficient to entitle a petitioner to discovery under Rule 6 might not entitle a petitioner to an evidentiary hearing if discovery reveals the absence of any genuine issues of disputed fact. Blackledge v. Allison, 431 U.S. 63, 80 (1977). Whether the record raises a genuine factual issue is decided by the same standards

9

used to decide a Rule 56 motion for summary judgment. Id.

Following discovery, the district court will thus have the opportunity to decide whether East has raised a genuine question of material fact requiring an evidentiary hearing.  To ultimately succeed on his claim, East must show that Mr. Ormesher controlled crucial prosecutorial decisions throughout the proceedings to such an extent that Ormesher was effectively in charge of East's prosecution. See Person, 854 F.2d at 660.

B.

### *BRADY* CLAIMS

East argues next that the district court erred by failing to hold an evidentiary hearing to resolve his Brady claims.  East alleges that the prosecution failed to provide material evidence to the defense in violation of Brady v. Maryland, 373 U.S. 83 (1963). Specifically, East alleges that the prosecution failed to disclose that Barbara Hardaway, one of the state's sentencing-phase witnesses, had severe mental problems and an extensive criminal record.  East further alleges that the prosecution failed to disclose a statement made by another witness, Kim Houston, that would have supported the defense's theory at trial that another person committed the murder.[4]

---

[4]    East also alleges that the prosecution failed to disclose that Bonnie Covington, a prosecution witness, agreed to testify in exchange for the prosecution's agreement to dismiss unrelated charges that were pending against her at the time. East never asserted this claim in his habeas petition.  Following the district court's denial of his discovery motion, East attempted to amend his petition to add this claim.  However, the court denied his motion to amend.  East fails to show that the district court abused its discretion in denying his motion to amend. East filed his motion late in the proceedings.  Moreover, the district court had already previously granted East leave to

10

To prevail under Brady, East must show (1) that the prosecution failed to disclose evidence, (2) that the evidence was favorable to his defense, and (3) that the evidence was material. Wilson v. Whitley, 28 F.3d 433, 435 (5th Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 754 (1994). Impeachment evidence is subject to disclosure under Brady. United States v. Bagley, 473 U.S. 667, 676 (1985). Undisclosed evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. at 682. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

## 1. Barbara Hardaway

The crux of East's Brady claim with regard to Hardaway is that the state failed to disclose that she has an extensive history of severe mental illness and numerous felony and misdemeanor convictions. During the sentencing phase of East's trial, Hardaway testified that East robbed and brutally raped her approximately three months before Sear's murder. She also testified that East threatened to kill her and confessed to murdering several other women.

East contends that he could have effectively impeached Hardaway's testimony with evidence of her mental illness. East's habeas petition includes a copy of a mental status report on Hardaway that was in existence at the time of East's trial. This

---

amend his petition to add his due process claim. Because East raises this claim for the first time on appeal, we decline to address its merits. Taylor v. Green, 868 F.2d 162 (5th Cir.), cert. denied, 493 U.S. 841 (1989).

11

report was apparently prepared as part of a competency hearing before a state district court in Bexar County, Texas, where Hardaway was under indictment for burglary. The report states that Hardaway experienced bizarre sexual hallucinations and that she believed that unidentified individuals were attempting to kill her. Significantly, the report concludes that Hardaway was incapable of distinguishing between reality and the fantasies caused by her hallucinations. The report concluded that Hardaway was mentally incompetent to stand trial on the burglary charge.[5]

Given the importance of Hardaway's testimony to the prosecution's case during sentencing, her mental records are likely material as impeachment evidence because they cast doubt on the accuracy of her testimony. The state concedes that Hardaway was a critical witness for the prosecution. In contrast to the prosecution's other sentencing-phase witnesses, Hardaway provided the jury with evidence of other unadjudicated murders committed by East. Indeed, the prosecution referred to Hardaway's testimony at least three times during closing arguments. Under these circumstances, we disagree with the state's assertion that East's ability to effectively impeach Hardaway is immaterial because it would not undermine the remainder of the state's case at sentencing. See Lindsey v. King, 769 F.2d 1034, 1042 (5th Cir. 1985)(observing that the effective impeachment of a crucial witness has consequences for the prosecution's case far exceeding the effect on that witness).

---

[5] Hardaway was declared competent to stand trial several months later. However, the state dismissed the burglary charge. In exchange, Hardaway pled guilty to criminal trespass.

12

Even if Hardaway's mental records are material impeachment evidence, however, East fails to allege any facts suggesting that the prosecution knew about these records. Our review of the record reveals no evidence that would have put the prosecution on notice that Hardaway was mentally ill. Mere speculative and conclusory allegations that the district attorney might have known about Hardaway's condition are not, however, sufficient to entitle East to discovery and an evidentiary hearing. Ward v. Whitley, 21 F.3d at 1367.

East alternatively argues that the prosecution had a duty to investigate Hardaway's mental records and, therefore, should be deemed to have knowledge of any exculpatory evidence that a reasonable investigation would have revealed. In United States v. Auten, 632 F.2d 478, 480 (5th Cir. 1980), we held that the prosecution is deemed to have knowledge of any criminal history information pertaining to its witnesses that would be revealed by a routine check of FBI and state crime databases, including a witness' state "rap sheet." The court based its holding on its recognition that the prosecution has ready access to certain types of information that are often crucial to the defense. We therefore concluded that the prosecution should bear the burden of obtaining and disclosing the criminal history of its witnesses "in the interests of inherent fairness." Id. (quoting Calley v. Callaway, 519 F.2d 184, 223 (5th Cir. 1975)).

We disagree, however, with East's contention that a prosecutor's duty to investigate a witness' criminal history extends to a witness' mental history. Neither Auten nor any of the

13

other cases cited by East impose this duty on the prosecution. East fails to show how mental records are any more accessible to the prosecution than to the defense. Typically, mental health records are subject to strict privacy regulations that restrict access.[6] East's argument thus runs afoul of other decisions by this court holding that Brady "does not place any burden upon the Government to conduct a defendant's investigation or assist in the presentation of the defense's case." United States v. Marrero, 904 F.2d 251, 261 (5th Cir.), cert. denied, 498 U.S. 1000 (1990). We therefore decline East's invitation to extend our holding in Auten to the mental records of prosecution witnesses.

East's argument that the prosecution violated Brady by failing to disclose Hardaway's criminal history presents a more difficult question. The record shows that, at the time of East's trial, Hardaway had been convicted of four felonies: three convictions for check forgeries and one conviction for delivery of marijuana. The record also shows that Hardaway had been convicted of at least two misdemeanors: one conviction for prostitution and one conviction for petty theft. Under Auten, the prosecution was deemed to have

---

[6] In fact, Texas law restricts the disclosure of mental health records. Section 611.002 of the Texas Health and Safety Code provides:

> Communications between a patient and a professional, and records of the identity, diagnosis, evaluation, or treatment of a patient that are created or maintained by a professional, are confidential.

Section 611.004 provides that a mental health professional may disclose mental health records to law enforcement personnel only if "there is a probability of imminent physical injury by the patient to the patient or others or there is a probability of immediate mental or emotional injury to the patient."

14

knowledge of these convictions and any other facts relevant to Hardaway's criminal history that would have been revealed through a routine FBI check and a review of her state rap sheet. 632 F.2d at 480.

Whether the prosecution's failure to disclose Hardaway's criminal history violates Brady, however, turns on its materiality as impeachment evidence. East contends that he would have investigated Hardaway's criminal history and eventually uncovered Hardaway's mental records in the files of the Bexar County district court if the prosecution had disclosed Hardaway's rap sheet. Whether Hardaway's rap sheet would have led to her mental records turns on the nature and extent of the information contained in her rap sheet at the time of East's trial. For example, if Hardaway's rap sheet reveals her burglary indictment in Bexar County, this information may well have led East to the record of Hardaway's competency hearing held in connection with this charge. Hardaway's state rap sheet is not, however, in the record. East specifically requested Hardaway's rap sheet, but the district court denied his request. Because Hardaway's criminal records are critical to resolving East's Brady claim, we conclude that the district court erred in refusing East's discovery request pertaining to these records.

On remand, the district court should therefore grant East reasonable discovery on his Brady claim, including production of Hardaway's rap sheet. As with East's due process claim, the court will have an opportunity after discovery to determine whether East's Brady claim presents genuine issues of disputed fact. If no

15

factual issues remain after discovery, the district court may determine the materiality of Hardaway's criminal history as a matter of law without the need for an evidentiary hearing. Tijerina v. Thornburgh, 884 F.2d 861 (5th Cir. 1989); see also Matta-Ballesteros v. Henman, 896 F.2d 255, 258-59 (7th Cir.), cert. denied, 498 U.S. 878 (1990)(holding that an evidentiary hearing was unnecessary because discovery placed all the facts essential to deciding the petitioner's claim before the court).

### 2. Kim Houston

East contends next that his sister-in-law, Kim Houston, provided the prosecution with a statement that supported the defense's theory at trial that East's friend, Troy Robinson, actually committed the murder. To counter the defense's theory, the prosecution presented the testimony of several alibi witnesses who placed Robinson at a different location at the time of the murder. According to East, Houston saw Robinson at a time and place inconsistent with the testimony of these alibi witnesses. East maintains that Houston's statement would have allowed him to impeach the prosecution's alibi witnesses and, accordingly, the prosecution violated Brady by failing to disclose the statement.

East's argument is unpersuasive. According to an affidavit submitted by the state, Houston informed the prosecution that she saw Robinson on the day **after** the murder. Houston's statement to the prosecution did not, therefore, undermine the testimony of the prosecution's alibi witnesses. The prosecution is not obliged to disclose impeachment evidence unless the evidence is "favorable to an accused." Bagley, 473 U.S. at 676. We therefore conclude that

16

East's <u>Brady</u> claim involving Houston must fail.

C.

*NAPUE* **CLAIMS**

East next argues that the prosecution knowingly used false testimony in violation of <u>Napue v. Illinois</u>, 360 U.S. 264, 271 (1959) when it presented the testimony of Hardaway during the sentencing phase of the trial. According to East, Hardaway's mental illness suggests that her testimony was probably false. To prevail under <u>Napue</u>, East must show (1) that Hardaway's testimony was actually false, (2) that the testimony was material, and (3) that the prosecution knew that her testimony was false. <u>United States v. Blackburn</u>, 9 F.3d 353, 357 (5th Cir.), <u>cert. denied</u>, ___ U.S. ___, 115 S.Ct. 102 (1994).

East's allegations fail to establish a <u>prima facie</u> case for relief under <u>Napue</u>. East fails to allege any facts suggesting that the prosecution knew about Hardaway's mental illness. As we discussed previously, we found nothing in the record that should have put the prosecution on notice that Hardaway might be mentally ill. East's allegations merely suggest that additional discovery and an evidentiary hearing might uncover evidence that the prosecution knew about Hardaway's illness. These conclusory and speculative allegations are not, however, sufficient to entitle East to discovery or an evidentiary hearing under <u>Townsend</u>. <u>See</u> <u>Ward</u>, 21 F.3d at 1367.

D.

**THE LESSER INCLUDED OFFENSE CHARGE**

East next contends that the district court erred in rejecting

17

his claim that the state trial court violated the Supreme Court's decision in Beck v. Alabama, 447 U.S. 625, 638 (1980) by denying his request to instruct the jury on felony murder and murder as lesser included offenses.  In Beck, the Court held that a state cannot impose a blanket ban on lesser-included-offense instructions in capital cases. Id.  Subsequent decisions by this court have consistently held that a state trial court may not, under Beck, refuse a lesser-included-offense instruction "if the jury could rationally acquit on the capital crime and convict for the noncapital crime." Cordova v. Lynaugh, 838 F.2d 764, 767 (5th Cir.), cert. denied, 486 U.S. 1061 (1988); see also Reddix v. Thigpen, 805 F.2d 506, 511 (5th Cir. 1986).

East contends that evidence of his intoxication prior to the murder raised a factual issue as to whether he possessed the requisite specific intent to kill required for capital murder.[7] According to East, the trial court should have submitted murder and felony murder as lesser included offenses because the jury could have reasonably inferred from the evidence of his intoxication that he lacked the specific intent to kill.

In deciding whether a jury could rationally acquit on the capital crime and convict for the noncaptial crime, we must turn to Texas law. Cordova, 838 F.2d at 767-768.  Texas law establishes a two-prong test for determining whether a court must submit a lesser

---

[7]    Under § 19.03(a)(2) of the Texas Penal Code, the state must prove that a capital murder defendant not only "intended to engage in the act that caused the death," but also that the defendant "specifically intended death to result from that conduct." Kinnamon v. State, 791 S.W.2d 84, 88-89 (Tex.Crim.App. 1990).

included offense to the jury:

> First, the lesser included offense must be included within the proof necessary to establish the offense charged. Secondly, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser charge.

Royster v. State, 622 S.W.2d 442, 446 (Tex.Crim.App. 1981). Using Royster's two-prong test, Texas courts have held that murder is a lesser included offense of capital murder and should be submitted to the jury where the evidence is sufficient to negate an element required for capital murder. See Ross v. State, 861 S.W.2d 870, 876 (Tex.Crim.App. 1993).

Texas law does not, however, allow evidence of voluntary intoxication to negate a specific intent. In Hawkins v. State, 605 S.W.2d 586, 589 (Tex.Crim.App. 1980), the Texas Court of Criminal Appeals held that evidence of intoxication could not "negate the elements of intent or knowledge" for a general intent crime. Several decisions by Texas' lower appellate courts have similarly held that intoxication does not negate a **specific** intent. Witherspoon v. State, 671 S.W.2d 143, 144 (Tex.App.-- Houston [1st Dist.] 1984, writ ref.)(intoxication does not negate specific intent to rape); Pimentel v. State, 710 S.W.2d 764 (Tex.App.-- San Antonio 1986, writ ref.)(rejecting argument that intoxication negates specific intent). Therefore, under Texas law, a jury could not acquit East of capital murder and convict him of murder based on evidence that he was voluntarily intoxicated. We therefore conclude that the district court did not err in rejecting East's Beck claim.

E.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

19

East next argues that the district court erred in rejecting his claim that his trial counsel provided ineffective assistance of counsel in violation of the Sixth, Eighth, and Fourteenth Amendments. East posits two grounds for finding that his trial counsel was constitutionally deficient. First, East contends that his counsel failed to adequately investigate Hardaway's mental history. Second, East contends that his counsel failed to investigate East's juvenile records. East maintains that his juvenile records contain important mitigating evidence. For example, East contends that his juvenile records show that he was making progress in improving his behavior and that he expressed genuine remorse for a rape he committed as a juvenile. East's records also show that he suffered from mental problems.

To prevail on his claim, East must demonstrate that his counsel was deficient and that this deficiency prejudiced his case. Morlett v. Lynaugh, 851 F.2d 1521, 1525 (5th Cir. 1988), cert. denied, 489 U.S. 1086 (1989). Deficient performance is shown by proof that "counsel made errors so egregious that he did not satisfy the requirements of 'counsel' under the sixth amendment." Id. In evaluating trial counsel's performance, we must be highly deferential to counsel's trial tactics and decisions. Valles v. Lynaugh, 835 F.2d 126, 128 (5th Cir. 1988). We must also be particularly careful to avoid "the distorting effects of hindsight." Id.

We are unpersuaded that East's allegations show that his trial counsel was ineffective for failing to investigate Hardaway's mental history. East points to nothing in Hardaway's testimony or

20

elsewhere in the record that would have put his counsel on notice that Hardaway was mentally ill. Indeed, in discussing his Brady claims, East concedes that Hardaway's testimony was sufficiently compelling and coherent that it likely influenced the jury's decision to return a death sentence. Therefore, absent any facts that would have put East's counsel on notice of Hardaway's mental illness at the time of trial, we are not persuaded that his counsel's failure to investigate Hardaway's mental history "fell below an objective standard of reasonableness" for professional performance. Theriot v. Whitley, 18 F.3d 311, 313 (5th Cir. 1994).

Similarly, we are not persuaded that counsel's performance was constitutionally defective for failing to obtain his juvenile records. These records contain information that could have arguably harmed East more than it helped. In fact, the habeas record contains an affidavit by East's trial counsel stating that both he and East decided, as a matter of strategy, not to emphasize East's problems as a juvenile. We therefore conclude that the district court did not err in rejecting East's ineffective assistance of counsel claims.[8]

F.

### PENRY CLAIM

Finally, East contends that the district court erred in rejecting his claim that the statutory special issues submitted to the jury during the sentencing phase of his trial prevented the

---

[8] In his brief, East attempts to incorporate arguments made in his habeas petition "in the interest of brevity." Because East does not brief these arguments on appeal, we deem them abandoned. Morrison v. City of Baton Rouge, 761 F.2d 242, 244 (5th Cir. 1985).

jury from considering and giving effect to crucial mitigating evidence in violation of Penry v. Lynaugh, 492 U.S. 320, 322-323 (1989). Pursuant to Texas Code of Criminal Procedure Article 37.071, the state trial court submitted two special interrogatories to the jury at the close of the sentencing phase:

> (1) Was the conduct of the defendant, Wayne East, that caused the death of the deceased, Mary Eula Sears, committed deliberately and with the reasonable expectation that the death of the deceased or another would result?

> (2) Is there a probability that the defendant, Wayne East, would commit criminal acts of violence that would constitute a continuing threat to society?

East contends that neither interrogatory allowed the jury to consider the fact that he used illegal drugs immediately prior to the murder in mitigation of his sentence.

East's Penry claim is foreclosed by this court's recent decision in Lackey v. Scott, 28 F.3d 486 (5th Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 743 (1995). In Lackey, we held that Texas' statutory special issues allowed the jury to consider and give mitigating effect to evidence that the defendant was intoxicated at the time of the offense. Id. at 489. According to the court, evidence of voluntary intoxication is relevant to deciding whether the defendant acted deliberately. This evidence is also relevant to whether the defendant posed a continuing threat to society. The court concluded that Texas' special issues adequately addressed both of these factors:

> [V]oluntary intoxication is not the kind of "uniquely severe permanent handicap[] with which the defendant was burdened through no fault of his own" that requires a special instruction to ensure that the mitigating effect of such evidence finds expression in the jury's sentencing decision."

Id. (quoting Graham v. Collins, 950 F.2d 1009, 1029 (5th Cir.

22

1992), aff'd, ___ U.S. ___, 113 S.Ct. 892 (1993)).  We conclude, therefore, that the district court properly dismissed East's Penry claim.

## III.

For the reasons stated above, we VACATE the district court's dismissal of East's due process claim and his Brady claim involving Hardaway and REMAND this portion of East's habeas petition to the court for proceedings consistent with this opinion.  We AFFIRM the district court's dismissal of East's remaining claims.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.