**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 96-11227
_____

WAYNE EAST,

                                    Petitioner-Appellant,

VERSUS

GARY JOHNSON, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

                                    Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____
September 15, 1997

Before POLITZ, Chief Judge, and KING and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

    Wayne East, a Texas death row inmate, appeals the district court's denial of his petition for writ of habeas corpus.  As grounds for relief, East alleges that the district court erred in its conclusion that certain undisclosed evidence was not material and therefore did not violate Brady v. Maryland, 373 U.S. 83 (1963).  We find merit in his contention and vacate his sentence of death.

I.

    In August of 1982, East was convicted of capital murder and sentenced to the death penalty in connection with the November 23, 1981, killing of Mary Eula Sears.  In 1992, after exhausting his

claims in state court, East filed a federal habeas petition alleging 23 grounds for reversing his conviction and death sentence. The district court dismissed East's petition. East appealed to this Court and we granted him limited relief. East v. Scott, 55 F.3d 996 (5th Cir. 1995). Specifically, we vacated the district court's dismissal of both East's due process claim and East's Brady claim and remanded those portions of East's habeas petition to the district court for proceedings consistent with our opinion. East, 55 F.3d at 999-1005.[1] We affirmed the district court's dismissal of all of East's other claims.

On remand, the district court permitted East to engage in discovery on the due process and Brady claims. During this discovery, East, by unopposed motion, amended his habeas petition to include a new Brady claim. East's new Brady claim alleged that the prosecution had failed to disclose exculpatory evidence that contradicted a former suspect's alibi witnesses.[2] A magistrate judge conducted an evidentiary hearing on all of East's claims.

The magistrate judge recommended that East's habeas petition be denied, concluding that there was no evidence to indicate that

---

[1] East's Brady claim alleged that the prosecution failed to disclose the criminal record of Barbara Hardaway, one of the state's sentencing-phase witnesses, and that production of Hardaway's criminal record would have led East to discover her mental history and allow East to impeach her testimony.
East's due process claim was based on the involvement of a private prosecutor in East's trial.

[2] The alleged exculpatory evidence consisted of the undisclosed statements of Richard Miller and Earlie Payne. These statements, according to East, substantially contradicted evidence put on by the state regarding the whereabouts of Troy Robinson, who was originally charged in connection with the murder.

the private prosecutor was in charge of the prosecution and that despite the Brady violations, there was not a reasonable probability that if the evidence had been disclosed to East, the result of the proceeding would have been different.  The district court adopted the magistrate judge's report and dismissed East's habeas petition.

East applied for a certificate of probable cause, or in the alternative a certificate of appealability, which the district court denied.  East then filed a timely notice of appeal and this Court issued a certificate of appealability.  East v. Johnson, No. 96-11227 (5th Cir. Feb. 25, 1997).[3]

II.

A.  Issues and Standard of Review

In our grant of a certificate of appealability, we limited East's appeal to the issues of whether the district court correctly concluded that the prosecution's failure to disclose the statements of Richard Miller and Earlie Payne and the criminal history of Barbara Hardaway did not violate Brady v. Maryland, 373 U.S. 83 (1963).

We review the district court's Brady determinations de novo. United States v. Green, 46 F.3d 461 (5th Cir. 1995).  To establish

---

[3] The Supreme Court in Lindh v. Murphy, No. 96-6298 (June 23, 1997), held that the Antiterrorism and Effective Death Penalty Act ("AEDPA"), signed into law on April 24, 1996, does not apply retroactively.  East petitioned for a certificate of probable cause or in the alternative a certificate of appealability prior to April 24, 1996.  Therefore, we treat our ruling as a grant of a certificate of probable cause. See Rector v. Johnson, --- F.3d ---, No. 96-50443, 1997 WL 469447 (5th Cir. Aug. 18, 1997).

a Brady claim, a petitioner must demonstrate that (1) the prosecution suppressed or withheld evidence (2) favorable to the defense and (3) material to guilt or punishment. Westley v. Johnson, 83 F.3d 714, 725 (5th Cir. 1996). Undisclosed evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). A reasonable probability is established when the suppression of evidence "'undermines confidence in the outcome of the trial.'" Kyles v. Whitley, 514 U.S. 419 (1995) (quoting Bagley, 473 U.S. at 678).

B. Hardaway's Criminal History

We turn first to East's claim that the district court erred in concluding that Barbara Hardaway's testimony was immaterial and, therefore, that the nondisclosure of impeachment evidence could not support a Brady violation. The state called Hardaway as a witness in the sentencing phase of the trial to support its argument that East posed a future danger to the public.[4] Hardaway testified in graphic detail that East robbed and raped her three months before Ms. Sears' murder. Hardaway testified that on the morning of August 15, 1981, she accepted a ride in an automobile that East was driving. East then drove to a remote area and demanded sex from Hardaway. Hardaway stated that she attempted to flee but was

---

[4]The prosecution offered this testimony to support an affirmative answer on the second special sentencing issue for capital cases: whether the defendant would likely commit future criminal acts of violence that would constitute a continuing threat to society. *See* Tex. Crim. P. Code Ann. art. 37.071.

4

forcibly restrained by East, who then proceeded to brandish a gun and point it at Hardaway. Then, according to Hardaway, East disrobed her and raped her in the back seat of the car. Hardaway testified that after the rape, East threatened her by stating that he was "going to blow [her] brains out" and told her that he had murdered several other women. East also allegedly stole approximately 120 dollars from Hardaway's purse before driving Hardaway home.

Hardaway was a key witness for the prosecution on the future dangerousness issue and was the only witness who provided the jury with evidence of other murders East allegedly committed. The balance of the state's evidence at the sentencing phase was bland when compared with Hardaway's testimony. The bulk of the state's evidence was almost perfunctory testimony by a succession of law enforcement officials stating that East would probably commit criminal acts of violence in the future.[5] Other testimony at the sentencing phase included alleged spousal abuse by East, East's involvement in the unauthorized use of a motor vehicle, East's involvement in the theft of railroad ties, East's involvement in an attempted burglary, and an altercation between East and prison guards while awaiting sentencing. The state also presented the testimony of a teenage boy who said that when East was sixteen years old, he had committed an act of sodomy on the witness, who

---

[5] The law enforcement officials based their opinions on East's general reputation and their knowledge of East's prior incidents with police. This sort of testimony was given by at least eight of the nineteen witnesses called at the sentencing phase.

5

was five years old at the time.

The state obviously considered Hardaway's testimony important. In its closing arguments during the sentencing phase, the prosecution referred to Hardaway's testimony at least eight times. The prosecution recounted East's threats to Hardaway and the other details surrounding the alleged rape.

In his earlier appeal, East argued that he could have impeached Hardaway's testimony with evidence of her mental illness. He pointed to a mental status report on Hardaway that was in existence at the time of East's trial. The report, prepared as part of a competency hearing in a state court criminal trial, concluded that Hardaway experienced bizarre sexual hallucinations and believed that unidentified individuals were attempting to kill her. The report found that Hardaway was incapable of distinguishing between reality and the fantasies caused by her hallucinations. *See* East, 55 F.3d at 1003. According to the report, Hardaway was mentally incompetent to stand trial on a pending burglary charge. In reviewing East's prior appeal, this Court stated:

> Given the importance of Hardaway's testimony to the prosecution's case during sentencing, her mental records are likely material as impeachment evidence . . . . Under these circumstances, we disagree with the state's assertion that East's ability to effectively impeach Hardaway is immaterial because it would not undermine the remainder of the state's case at sentencing.

East, 55 F.3d at 1003. We remanded for reasonable discovery on whether Hardaway's criminal record would have led East to discover her mental history.

On remand, the magistrate judge found that if the prosecution had disclosed Hardaway's rap sheet, "her mental history, which was available in a Bexar County proceeding involving a question of her competency, would have become available to East." However, both the magistrate judge and the district court ultimately found that even if Hardaway's testimony had been successfully impeached, the details of the Sears murder and other evidence the state produced sufficiently supported the jury's affirmative answer to the future dangerousness question. Therefore, the district court concluded that the undisclosed evidence did not undermine confidence in the verdict.

The government argues that the magistrate judge and the district court properly concluded that the potential impeachment of Hardaway was immaterial to East's sentence. It contends (1) that much of Hardaway's testimony was corroborated by an investigating police officer; and (2) that the revelation of Hardaway's mental status does not undermine confidence in the jury's sentencing verdict. We address these contentions in turn.

1. Corroborating Evidence

The assertion that Hardaway's testimony was adequately corroborated is not supported by the record. The officer in question, Elmer Graham, testified that Hardaway reported that she had been raped on August 15, 1981. He said Hardaway was examined but that no injuries were discovered. Graham questioned East in connection with the alleged rape, and East denied any involvement according to Graham.

7

Officer Graham stated that he then asked East whether East had purchased any beer from a convenience store in the area where the alleged rape had occurred. Graham testified that East denied ever visiting a convenience store near the scene of the alleged crime. Graham responded to East's denial by telling East that the convenience store employee had reported seeing East on the day of the alleged rape. According to Graham, East then changed his story, saying that he had indeed stopped at the convenience store to purchase beer. Graham further testified that East initially denied knowing Hardaway, but later said he might have met Hardaway at a party and that she may have been in his car on the day of the alleged rape.

At most, this testimony corroborates Hardaway's testimony that she met East and was in the car with him. However, and more importantly, it does not corroborate her tale of rape, assault, and unreported murders.

2. Confidence in the Sentencing Verdict

The government also points to evidence of other acts of violence committed by East, including the testimony of the teenage boy who said he was sexually assaulted at the age of five by East. It argues that this testimony, along with the evidence of Ms. Sears' murder and other evidence of violent acts, independently demonstrated East's propensity for violence. Therefore, it contends that Hardaway's testimony was not so important to the state's case that impeachment of Hardaway would undermine confidence in the jury's sentencing recommendation.

8

Rather than consider whether impeachment of Hardaway's testimony would undermine confidence in the jury's sentencing recommendation, the district court apparently considered whether the evidence was sufficient to support the recommendation without Hardaway's testimony. The Supreme Court has warned that the <u>Brady</u> materiality analysis

> is not a sufficiency of evidence test. A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict. The possibility of an acquittal on a criminal charge does not imply an insufficient evidentiary basis to convict. One does not show a <u>Brady</u> violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

<u>Kyles v. Whitley</u>, 115 S. Ct. 1555, 1566 (1995). In applying this standard to undisclosed impeachment evidence, we have recognized that when the testimony of a witness who might have been impeached by undisclosed evidence is strongly corroborated by additional evidence, the undisclosed evidence generally is not found to be material. <u>Wilson v. Whitley</u>, 28 F.3d 433, 439 (5th Cir. 1994), *cert. denied*, 513 U.S. 1091 (1995). In contrast, when "`the withheld evidence would seriously undermine the testimony of a key witness on an essential issue or there is no strong corroboration, the withheld evidence has been found to be material.'" <u>Id.</u> (citation omitted).

While Ms. Sears' murder and other testimony provided evidence of East's violent nature, Hardaway was a key witness for the state in demonstrating East's propensity toward violence and his future

9

dangerousness. The state produced no corroborating evidence for Hardaway's most damaging statements regarding her alleged rape and assault and East's alleged confession to other murders. In its closing, the state placed more reliance on Hardaway's testimony than any other item of evidence to establish East's future dangerousness. We are satisfied that Hardaway's testimony was a critical part of the state's case that East would likely commit future criminal acts of violence that would pose a continuing threat to society. We therefore conclude that the prosecution's Brady violation was material and necessitates that we vacate East's sentence.

C. Robinson and the Alibi Witnesses

On remand, after conducting discovery, East added another Brady claim alleging that the prosecution failed to disclose exculpatory evidence that contradicted the alibi witnesses of another suspect in the murder, Troy Robinson. Circumstantial evidence linked Robinson to Ms. Sears' murder. For example, Robinson's car was parked in the victim's driveway and the knife that was the murder weapon belonged to him. In addition, a pawn shop dealer testified that Robinson sold him some of the victim's jewelry. Law enforcement officials initially focused their investigation on Robinson, which led to his arrest and indictment for the murder of Ms. Sears.

The state eventually concluded that East rather than Robinson committed the murder. This change occurred when an accomplice to the murder, Dee Dee Martin, provided eyewitness testimony that East

10

had committed the murder.  At the trial, the state presented the testimony of four witnesses to establish that Robinson was not present when the murder was committed.[6]  On remand after his first appeal, East discovered two sworn statements in prosecution files that, according to East, materially undermined the testimony of the state's "Robinson alibi" witnesses.  According to the state's four trial witnesses, East borrowed Robinson's car, leaving Robinson at his girlfriend's home in the Wildcat Apartment Complex, where he remained from about 3 a.m. until 9:30 a.m. on the day Ms. Sears was murdered.  The Wildcat Apartments are located several miles from the murder scene.  The evidence established that Robinson's car remained in Ms. Sears' driveway until at least 8:45 a.m. and that the murder occurred sometime before that.

The two newly discovered affidavits East relies on were executed by Richard E. Miller and Earlie Lee "Bubba" Payne.  In his affidavit, Miller stated that he saw Robinson walking down the street in the vicinity of the Wildcat Apartments before daylight on the morning of November 23.  Miller stated that he gave Robinson a ride to the home of Danny J. Rogers.  Earlie Lee "Bubba" Payne stated, by affidavit, that he was living with Danny J. Rogers on the day of the murder and that Robinson visited Rogers' home that morning around "8:00 or 9:00 in the morning."  Trial witnesses Danny J. Rogers and Linda Blanton testified that East visited Rogers' apartment sometime between 8:00 and 10:00 the morning of

_____

[6]  These witnesses were Robert Lee White, Danny J. Rogers, Linda Blanton, and Bonnie Covington.

11

the murder.

East argues that the affidavits of Miller and Payne would have undermined the prosecution's theory of the case at the guilt-innocence stage of his trial and called into question the manner in which the police constructed its case against East. The district court, analyzing the same claim, concluded that although the prosecution improperly failed to disclose the affidavits to East, the affidavits were not material to East's guilt. Assuming *arguendo* that the nondisclosure by the state was improper, we agree with the district court.

While the affidavits may call into question Robinson's precise whereabouts around the time of the murder, particularly the exact time he left Covington's and arrived at Rogers' home, they in no way place him at the scene of the crime. Also, the affidavit of Miller actually strengthens a key point in the prosecution's case, that East had borrowed Robinson's car. Nor do the Miller and Payne affidavits contradict the evidence supporting East's conviction, including the eyewitness testimony of Dee Dee Martin. Martin was the most crucial witness in the state's case against East. Miller and Payne's affidavits do not undermine that testimony.

As the district court reasoned, "whether Troy Robinson actually participated in the crime or not does not materially affect the evidence inculpating East as guilty of a capital murder committed during the course of a burglary." The affidavits provide no evidence that East was not involved in the murder and do not "put the whole case in such a different light as to undermine

12

confidence in the verdict." <u>Kyles</u>, 115 S. Ct. at 1566. In sum, the Miller and Payne affidavits do not undermine our confidence in East's guilt.

III.

For the reasons stated above, we VACATE East's death sentence because the prosecution failed to disclose material <u>Brady</u> evidence to East at the sentencing phase. We therefore REMAND this case to the district court with instructions to issue the writ of habeas corpus unless the State of Texas takes steps within a reasonable time to conduct a new sentencing hearing. We AFFIRM the judgment of the district court in all other respects.

AFFIRMED in part.

VACATED and REMANDED in part.

13